EMMA J. RAUGHTIGAN *vs.* THE NORWICH NICKEL AND BRASS COMPANY.

Second Judicial District, Norwich, October Term, 1912.

HALL, C. J., PRENTICE, RORABACK, WHEELER and CASE, Js.

A testator under whom the plaintiff claimed title to the land in question, after having disposed of other specifically-described land in the second clause of his will, and after having devised in the third clause "all the rest and residue of my real estate, namely, all the

Raughtigan *v.* Norwich Nickel & Brass Co.

land situated" (describing other land than that in suit), added a seventh clause as follows: "All the rest and residue of my estate I hereby give, devise and bequeath unto" the plaintiff. *Held* that the clause last quoted was sufficient to carry the title to the land in question to the plaintiff, and that the will was therefore properly admitted in evidence in support of her alleged ownership.

In an action for obstructing a passway leading to a public street, by maintaining a fence across it, the main issue was as to the precise location of the small piece of land to which the plaintiff laid title, whether west of the fence as she claimed, in which case the fence barred her access to the street, or east of the fence as claimed by the defendant, in which case the rights of the plaintiff were unaffected by it. *Held* that an apparent uncertainty as to the exact location of the particular piece of land in suit might be solved by reference to the location of other tracts adjacent to it or in its immediate vicinity, and therefore that deeds of such tracts were properly received in evidence for this purpose.

An order of a Court of Probate removing an executor and appointing an administrator *de bonis non* in his place, is not open to collateral attack for mere irregularities in the proceedings preliminary thereto.

An administrator gave a deed in 1882 purporting to convey the title of his decedent, in the usual form of a warranty deed. *Held* that whatever defect such deed disclosed on its face was cured by the validating and confirming Act of 1909.

The account of the administrator showing his receipt of the purchase price of certain land sold, and the disposition of the proceeds, was admitted in evidence. *Held* that while of no vital consequence to the plaintiff's case, its admission was not improper.

The complaint in the present case contained two counts, each alleging ownership of the land and the appurtenant right of way. The obstruction stated in the first count was the construction and maintenance of a building, and in the second the erection and maintenance of a fence. The issues upon the first count were found for the defendant and upon the second count for the plaintiff. *Held* that there was no inconsistency in these conclusions.

In an action tried to the jury the trial judge cannot find the facts as though the case had been tried to the court; but a finding in that form, although improper, will not be disturbed on appeal if neither the parties nor this court suffer any prejudice or embarrassment therefrom.

The court's estimate of the weight and value of testimony is not to be substituted for that of the jury, provided theirs is reasonable and legally permissible.

The evidence in the present case briefly reviewed and the action of the trial judge, in refusing to set aside the verdict, sustained.

Argued October 16th—decided December 19th, 1912.

ACTION to recover damages for obstructing a right of way, brought to the Superior Court in New London County and tried to the jury before *Shumway, J.;* verdict and judgment for the plaintiff, and appeal by the defendant. *No error.*

The complaint was in two counts. Each alleged the plaintiff's ownership of a described piece of real estate, with a right of way over an adjoining lane which gave access to a near-by street. The first count averred the construction and maintenance of a building upon this lane by the defendant, and a consequent interference with the plaintiff's right of passage. The second count charged the same effect upon the plaintiff's right from a fence erected and maintained across the lane by the defendant.

The main disputed question upon the trial was as to the precise location of the land directly involved, which was a small rectangular block of about twelve feet by twenty feet in size. If the land was located to the west of the fence described in the second count, the obstruction barred the plaintiff's passage to the street, but if it lay to the east of the fence, then the plaintiff was in no way affected in her rights by the maintenance of the fence.

The plaintiff claimed title from her deceased father-in-law, and in support of her claim offered his last will. This instrument disposed of specifically described real estate in its second clause, not embracing the piece involved here. A third clause of the will devised "all the rest and residue of my real estate, namely, all the land . . . situated on the . . . northerly side" of the lane involved. The small piece with which this action is concerned lies south and outside of these described limits.

The seventh clause of the will was this: "All the rest and residue of my estate, I hereby give, devise and be-

queath absolutely unto the said Emma J. Raughtigan [the plaintiff] to be hers forever." The plaintiff claimed that the small piece of land referred to was disposed of by this clause.

For the same purpose—of showing title—and for the further purpose of locating the precise position of the land, and of other land in the immediate locality, and also for the purpose of defining the actual limits and course of the lane, the position of which had changed in the course of years, certain deeds were offered by the plaintiff.

One of these conveyances, essential to the chain of title, although purporting to be given by the administrator *de bonis non* of a certain deceased person's estate, was not, in fact, in the form of an administrator's deed, but was the usual warranty deed. This transfer took place in 1882.

Certain probate records of a period shortly prior to the execution of the last-named instrument were offered to show the due removal of the executor who preceded in office the administrator just referred to, and the latter's appointment. They were also offered to show the doings of the administrator with reference to the sale of the property involved, and his receipt of and accounting for the purchase price. It appeared that the removal of the executor by the Court of Probate was not preceded by the complaint in writing of an interested person, nor by the notice to appear, as required by the statute then in force.

All the papers so offered were admitted over the defendant's objection, and an exception noted in each instance.

In its charge to the jury the court, after referring briefly to the deeds and the will, said: "These are the papers under which the plaintiff claims title, and I say they are sufficient to give her title to the land described,

although there appears to be defect in the title of Thresher [the administrator *de bonis non* already referred to] to John Raughtigan; but this defect I think was cured in an Act of the legislature in 1909. That is purely a question of law, and nothing you have anything to do with further than to apply to the facts in this case." The court also charged the jury, in effect, that the property directly involved passed to the plaintiff by the seventh clause of the will.

The defendant had moved the court to direct a verdict for it. This was done as to the first count only, and the jury returned a verdict finding "the issues in favor of the defendant" on that count, and "the issues in favor of the plaintiff on the second count."

In making up his finding, the trial judge found the facts in the form prescribed where the trial is to the court, rather than to the jury.

The defendant assigns as error the rulings on evidence, the charge of the court in the matters referred to, the refusal of the court to direct a verdict as asked, and the form of the finding. Error is also assigned on the denial of the motion to set aside the verdict, and the evidence has been certified to this court.

*Charles F. Thayer* and *Charles V. James*, for the appellant (defendant).

*Charles Hadlai Hull* and *John H. Barnes*, for the appellee (plaintiff).

CASE, J. The will of John Raughtigan was properly admitted, and rightly construed by the court in the charge to the jury. It is true that the third clause starts by devising "all the rest and residue of my real estate," but this is carefully qualified and restricted

by what follows to property clearly located on the north side of the lane in question. Whatever uncertainty may have existed as to the precise position of the small strip of land involved in this action, it confessedly lies outside the limits of the tract so devised. If the effect of bringing this strip within the control of the third clause of the will were to carry out a manifest intention of the testator to prevent intestacy, the argument to that end would be more persuasive, but the seventh clause of the will disposes of the residuum of the estate, and is drawn with the obvious purpose of embracing real as well as personal property.

The deeds offered in evidence were admissible not only where they deal directly with the tract involved, but also where they are concerned with other pieces of land adjacent to it or in its immediate locality. It was necessary, in order to solve the apparent uncertainty as to the exact location of this strip, to plot the surrounding tracts, determine the general relations to each other of the different properties, and to definitely locate the lane as it formerly existed. These papers were pertinent upon all these matters, and,—with such proper extrinsic evidence as served to clarify the situation,—were properly admitted for these purposes. They also formed an important basis for the map which was used to give the jury some intelligent idea of the situation.

The probate orders removing the executor and appointing an administrator *de bonis non* in his place were not open to attack in this action for any mere irregularity in the preliminary proceedings leading up to them. *Emery* v. *Cooley,* 83 Conn. 235, 240, 76 Atl. 529.

Since the administrator's appointment must be regarded here as a regular and valid one, whatever defects his subsequent deed discloses upon its face were cured by chapter 263 of the Public Acts of 1909

(§ 4, pp. 1237, 1238), validating and confirming certain irregular sales of real estate by an administrator more than fifteen years prior to the passage of the Act.

His account, while of no vital consequence to the plaintiff's case, was pertinent enough as showing his receipt of the purchase price of the property so sold by him, and his accounting for it. These papers were properly admitted, and the court's instructions to the jury with reference to the effect of such of them as the charge dealt with were correct.

We are asked to render the jury's verdict of no effect, on the ground that their conclusion on one count is inconsistent with that on the other; that by its terms they have necessarily found that the plaintiff both owned and did not own the described property. This highly technical criticism rests upon a strained construction of the language framing the verdict. The jury's meaning is too obvious to warrant discussion, and fully supports the judgment which followed it.

Upon the trial of the cause there was little in actual dispute between the parties, save the precise location of the land. This apparently led the trial judge into the inadvertence of finding the facts as though the case had been tried to the court. Cases may arise where such an error would seriously, if not fatally, embarrass the record in this court, and the practice is of course one to be avoided. But no possible prejudice can have resulted to the defendant here, and we find no occasion to correct the finding, or to order its correction by the lower court. The facts in controversy, and such questions as we are called upon to determine, appear with sufficient clearness upon the record.

The only question of serious importance as the case is presented, arises on the denial of the motion to set aside the verdict as against the evidence. The description of the property in the deeds gives it no definite

anchorage. The framing of the first count of the complaint, in which the obstruction of the lane by a building is charged, shows the distinct uncertainty of the plaintiff herself as to the location of the lane with reference to her property.

There was, however, positive testimony from the witness Pitcher as to the location of the small strip at a point to the west of the obstructing fence. He had made an apparently careful survey of the immediate surrounding territory, had prepared the map used upon the trial, and by a process of elimination located the strip as described. It also appeared that he had been familiar with that particular section for more than thirty years. There was testimony from other witnesses long familiar with the locality tending to show an occupation of the strip some years back by Raughtigan.

By repeated decisions we have held that it is not for the court to substitute its own estimate of the proper weight and value of testimony for one that the jury, travelling by fair methods and disregarding no rule of law, find reasonably open to them. We think there was evidence to go to the jury upon this essential feature of the case, that the weight accorded to it by the jury was within their exclusive right as the sole triers of fact, and that the court properly refused to disturb their verdict.

There is no error.

In this opinion the other judges concurred.