## CONNECTICUT COLLEGE FOR WOMEN *vs.* TOWN OF GROTON.

MALTBIE, C. J., HINMAN, BANKS and BROWN, Js.*

Argued June 1st—decided July 22d, 1937.

* By agreement of counsel this case was argued before and decided by four judges.

*Francis F. McGuire,* with whom, on the brief, was *Frank L. McGuire,* for the appellant (plaintiff).

*Benjamin H. Hewitt,* for the appellee (defendant).

HINMAN, J. The complaint and amendments thereto alleged that Julia A. Bill, late of Groton, died December 24th, 1932, leaving a will, made a part of the complaint, by which she gave the residue of her estate to the plaintiff college, which residue consisted in part of real property located in Groton; that her estate was in process of administration until November 14th, 1935, when the residue was distributed to the plaintiff; and that by § 1173 of the General Statutes any funds and estate which have been or may be given by any person or persons to the board of trustees of the plaintiff and by them invested and held for the use of that institution, with the income thereof, are exempt from taxation. The first count also alleged that taxes were assessed by the defendant against the real property above mentioned for the years 1933 and 1934 amounting to $1351.42 and were paid by the executor out of the residue and "in making such payments said executor did not know that said residue was exempt from taxation . . . and paid said taxes by mistake and without full knowledge of the facts relating to the invalidity of said assessments." In the second count it was alleged that the tax collec-

tor of the defendant town has a warrant to collect taxes assessed against this real estate as of October 1st, 1935. The prayers for relief are for recovery on account of the taxes paid as alleged in the first count, for a declaratory judgment determining whether or not the plaintiff owes the tax assessed for 1935, and for any other appropriate relief.

The defendant demurred to each count on several grounds, but the gist of those on which the demurrer was sustained is that the plaintiff was not the owner of the property at the time the taxes were assessed, and that it was not exempt from taxation, under the statute upon which the plaintiff bases its claim to a right of exemption, until it was distributed to the plaintiff. The assignments of error pertain to the sustaining of the demurrer.

The Superior Court ruled, it appears from the memorandum of decision, that the residue of Mrs. Bill's estate, including the real estate here involved which was distributed as a part of it, did not so vest in the plaintiff that exemption from taxation would attach until distributed to it; also that, under the statute relied on, the exemption does not attach until the property is "invested and held for the use of" the plaintiff college. If the court was correct in holding that the real estate did not so become property of the plaintiff as to be subject to exemption as such until the date of distribution, which was subsequent not only to the assessment and payment of the taxes involved in the first count but also to the date as of which the tax was assessed which the second count concerns, it becomes unimportant to determine whether or not the real estate, to be exempt, must, under the statute, not only have become the property of the plaintiff but also be "invested and held for the use of such institution" as the statute, literally ap-

plied, would seem to require. The latter question aside, if this real estate was so devised to the plaintiff as to come under the general rule that the title passed to the beneficiary at the decedent's death the exemption would apply to it, whereas it would not if, as the court held, the intention evinced by the will and the situation thereunder were such that, for purposes of taxation by the defendant town, the status of this property is to be regarded as that of personalty, the legal title to which is in the executor until distributed, the rights of the beneficiary being, until then, equitable only. "It is only upon the delivery of personal property to the beneficiary through legal distribution after administration is complete, that he acquires the legal title to it. . . . It is distribution, not the death of the decedent, which transfers the title and ownership of personalty to the beneficiary." *Blodgett* v. *Bridgeport City Trust Co.*, 115 Conn. 127, 145, 161 Atl. 83.

The construction by the Superior Court of the gift to the plaintiff as being one of personalty in our opinion is confirmed by consideration of the will as a whole. The second paragraph, after making a specific devise of certain real estate on Monument Street to the Bill Memorial Library Association, provides that "all the rest, residue and remainder" of the testatrix's real estate shall be sold by the executor "and the proceeds thereof become a part of my general estate." All of the provisions made for numerous individuals and organizations in succeeding paragraphs are definitely pecuniary in character. The clause (13th) disposing of "all the rest, residue and remainder," in two instances, perhaps accidentally or, as the court below suggests, as a precautionary measure, included expressions which ordinarily would be appropriate to real property, but as a whole it manifestly contemplates a

gift purely of personalty. In addition to the prior positive direction to the executor to sell all of the real estate except that specifically devised, in this residuary clause the property passing thereunder is repeatedly referred to as "funds," it is provided that the "total amount of funds" passing to the college shall not exceed $300,000 "at the time of the payment of said funds as valued at that time by my executor" and there is a further residuary bequest, if the residue exceeds that sum, to the Bill Memorial Library Association. The complaint alleges, however, that the residue at no time exceeded the $300,000 "as valued in the manner stated by the will." The succeeding paragraph (14th) also provides that in payment of any of the foregoing legacies the executor "may deliver either cash or stocks or bonds . . . the same to be delivered and received in payment of said legacies, at the market value at the date of delivery as determined by my executor," but makes no mention of any similar provision pertaining to delivery of any real estate.

If, as we agree, the predominating intent manifested by the will was that the gift to the plaintiff should be one of personalty only, the further question is presented as to the effect upon taxability or exemption therefrom of the facts, imported by the complaint and conceded, that the executor, instead of selling the real estate here involved, as unequivocally directed by the will, retained it unsold and distributed it to the plaintiff as part of the residuary estate, and this, in turn, depends upon whether or not the doctrine of equitable conversion is applicable, as the court below held, so as to give that real estate, for the purposes of the present inquiry, the status of personal property. The doctrine is an application of the principle that equity regards as done what ought to be done. Under it money directed to be employed in the pur-

chase of land, and land directed to be sold and turned into money, are considered as that species of property into which the will or other instrument directs it to be converted. Pomeroy, Equity Jurisprudence (4th Ed.) Vol. 1, § 161, Vol. 3, § 1159. So far as is necessary to effectuate the lawful purposes and intent of the instrument and determine the property rights of those claiming under or through it, equity treats the property, from the time the conversion takes place, as of the kind and form into which it should have been changed, and determines the rights of the parties to it as in that form and kind. "Land directed or agreed to be sold, although yet unsold, is regarded and treated as money. It will not pass under a devise of land or of real estate. It will pass under a general gift, transfer, or bequest of personalty, or under a residuary bequest of personal property. . . . It is therefore always personal assets in the hands of executors and administrators for which they are accountable." Pomeroy, Op. Cit., Vol. 3, § 1164; *Sherman* v. *Flack*, 283 Ill. 457, 119 N. E. 293; *Chambers* v. *Preston*, 137 Tenn. 324, 331, 193 S. W. 109; Thompson, Wills (2d Ed.) § 461.

The doctrine being a creation of equity jurisprudence, and the estates or interests which result from it being equitable, jurisdiction of suits to maintain and protect such interests is in equity except where the doctrine, as it affects the devolution of property and practical questions pertaining thereto, is recognized and followed in the settlement and distribution of decedents' estates. Pomeroy, Op. Cit., Vol. 3, § 1159, p. 2748. It has been so recognized and followed in this State, and utilized to enable an alien, at the time of the testatrix's death incapable of taking any interest in real estate in this State, to receive that share of the residue which the will purported to give him notwithstanding that all of the estate not used in the payment

of debts and charges was real estate, which, however, the testatrix by her will directed to be sold, after the death of her husband who was given a life use, and gave one-half of the avails thereof to her brother, a resident of England. *Emery* v. *Cooley,* 83 Conn. 235, 238, 76 Atl. 529.

Under a similar application of the doctrine the real estate which the will of Mrs. Bill explicitly directed to be sold by her executor may be regarded and treated as personal property for the purposes pertaining to the settlement of the estate. The college, if occasion required, might invoke it in support of a claim to it under a pecuniary bequest. Under the circumstances here present it was entitled to choose whether it would take the property in its converted condition—personalty—or in its original and unconverted form—real estate. When the same person is entitled to receive the bequest, whether it remains in the form of realty or be sold and converted into money, that person may elect to take either. Election to take the former effects a reconversion. 2 Woerner, Administration (3d Ed.) p. 1143; Pomeroy, Op. Cit., Vol. 3, § 1175; *Beadle* v. *Beadle,* 2 McCrary (U. S.) 586, 596; *Armstrong* v. *McKelvey,* 104 N. Y. 179, 183, 10 N. E. 266; *Nall* v. *Nall,* 243 Mo. 247, 256, 147 S. W. 1006; *Meekins* v. *Branning Mfg. Co.,* 224 Fed. 202, 209. Until this right of election is actually exercised by some explicit and binding action, the property bears the same character as if the conversion were actually made. *Meekins* v. *Branning Mfg. Co.,* supra, p. 209; *Estate of Loyd,* 175 Cal. 699, 709, 167 Pac. 157. Therefore, for all purposes relevant to the present inquiry the real estate here involved, having acquired constructively the nature of personalty, retained the same until the plaintiff, by election through acceptance of distribution of it in its original state, worked a re-

conversion thereof into real estate. Thereby the college took by its own acts, as upon a purchase and not under the will, and title to the real estate vested in it only at the time when the reconversion actually took place. *Land Title & Trust Co.* v. *South Carolina Tax Commission,* 131 S. C. 192, 201, 126 S. E. 189, 42 A. L. R. 417; *Craig* v. *Leslie,* 16 U. S. (3 Wheat.) 563, 578; 13 C. J. p. 890. Not until distribution, at the earliest, did its right of exemption attach; it was not available to the estate of Mrs. Bill or to the executor while the title remained in it. If by failing to sell the real estate as directed the executor incurred a tax which if the property had been sold would not have been assessed on the proceeds, that, as the court below observed, would constitute no cause of action against the town, nor would it, of itself, invalidate the tax.

Decisions in other States which are in any degree relevant to the applicability of equitable conversion to tax questions have been carefully considered but are not regarded as determinative or persuasive adversely to the foregoing conclusions. Most of the cases relate to the question of jurisdiction to impose inheritance or succession taxes, in the State of domicil of a testator, in respect to real property, situated in another State, directed by the terms of the will to be sold. As to this there has been a considerable conflict of authority. See note, 42 A. L. R. 426 et seq.; *In re Estate of Jackson,* 217 Iowa, 1046, 252 N. W. 775, 91 A. L. R. 937, 941. In those cases where the applicability of the doctrine of equitable conversion for such purposes has been denied, decision has been based on the ground that it may not be utilized to transfer from one State to another the situs of property for purposes of such a tax (as in *Estate of Swift,* 137 N. Y. 77, 32 N. E. 1096) or that the doctrine is recognized in equity only and is not given effect in courts of law,

and so cannot be applied in proceedings for collection of inheritance or succession taxes. *Connell* v. *Crosby,* 210 Ill. 380, 71 N. E. 350. The present case involves no question of situs for taxation purposes and, as already noted, we have, in *Emery* v. *Cooley,* supra, extended the operation of the doctrine beyond proceedings strictly equitable to those pertaining or incident to the devolution of property. *People ex rel. Crook* v. *Wells,* 179 N. Y. 257, 71 N. E. 1126, cited by the appellant, concerned a residuary bequest of personalty, only, title to which, under our law, would remain in the executor until distribution, and involved no question of equitable conversion. In *Ellsworth College* v. *Emmet County,* 156 Iowa, 52, 135 N. W. 594, land was not held by the executor but by trustees to whom it was devised with direction to sell it and pay a residue of the proceeds to the trustees of the college as an endowment fund, and it was held that a statute exempting from taxation real estate owned by educational institutions was broad enough to cover the land so held. In *Watson* v. *City of Boston,* 209 Mass. 18, 95 N. E. 302, also, a fund the legal title to which was in trustees, the income payable to an educational institution, was held to be exempt from taxation on the ground that the whole beneficial interest was in the institution. Here we are concerned with the status of property while the estate is still in process of settlement by the executor, and the utilization of the doctrine of equitable conversion primarily pertains to devolution of property—determination as to when it passed into ownership by the ultimate beneficiary —of which liability to or exemption from taxation is an incident and consequence.

There is no error.

In this opinion the other judges concurred.